## W. H. EWING, Appellee, v. C. E. HATCHER, Appellant.

EVIDENCE: Opinion Evidence—"Appearance" of Person. How a person "appeared"—for instance, that his face appeared flushed, as though he was intoxicated—is the statement of a fact.

EVIDENCE: Opinion Evidence—Intoxication. The fact of intoxication may be shown by one who has observed the conduct and appearance of the person in question and describes the same; however, as a seeming departure from the general rule, a preliminary detail of the appearance and conduct of the person in question is not necessary.

EVIDENCE: Res Gestae—Motives and Intention. All declarations, acts and exclamations uttered by the parties to a transaction, which are contemporaneous with and accompany it, and are calculated to throw light upon the motives and intentions of the parties to it, are admissible as part of the *res gestae.* So held as to what defendant *said* and *did* at the time of an alleged assault on plaintiff.

EVIDENCE: Opinion Evidence—Functional Action of Body. Whether normal functional action of a visible organ of the body, having functions peculiarly its own, was interfered with in a specified way by a certain described wound, is a statement of fact and not opinion by the one suffering the injury.

EVIDENCE: Res Gestae—Expressions of Pain. Complaints of pain immediately following an injury are competent.

WITNESSES: Privileged Communications—Stenographer. A communication by an employer to his stenographer is not privileged unless made (a) by reason of the employment, (b) confidentially and (c) because necessary and proper to enable such employee to discharge her usual duties. (Sec. 4608, Code, 1897.)

PRINCIPLE APPLIED: Defendant was accused of having made an assault on plaintiff. Defendant stated to his stenographer that she should tell the plaintiff to come up; that he would treat him all right if he came to his house; that he thought perhaps he had been a little hasty, and perhaps they had both been wrong and they

had better get together and fix it up. The nature of the employment and duties of the stenographer does not appear further than the inference from the term "stenographer." The court says: "The matters * * * had no relationship to the duties imposed upon her as such, nor was the communication made to her in the capacity of stenographer." Held, communication not privileged.

EVIDENCE:   Admissions—Offer of Compromise.   Certain statements
7   of defendant held not to constitute an offer of compromise.

EVIDENCE:   Opinion Evidence—Intoxication.
2, 8

EVIDENCE:   Opinion Evidence—Experts—Cross-Examination.   In
9   the cross-examination of an expert, it is not necessary that the examiner confine himself to the facts established in the case. He may assume almost any state of facts for the purpose of testing the credibility of the witness and the extent of his knowledge.

*Appeal from Marshall District Court.*—B. F. CUMMINGS,
Judge.

SATURDAY, NOVEMBER 20, 1915.

REHEARING DENIED FRIDAY, APRIL 7, 1916.

ACTION to recover damages for injuries sustained by plaintiff on account of assault and battery alleged to have been committed by the defendant. Judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*F. E. Northup,* for appellant.

*Carney & Carney,* for appellee.

GAYNOR, J.—This is an action to recover for personal injuries alleged to have been the result of an assault made upon the plaintiff by the defendant. The defense is that plaintiff was the aggressor, and that whatever injuries he received were inflicted by the defendant in defense of his own person. The cause was tried to a jury, and a verdict rendered

for the plaintiff. Judgment being entered upon the verdict, defendant appeals.

In considering the errors complained of and upon which reversal is sought, we do, because of the manner in which the record is presented, confine ourselves only to those points touched on by the defendant in argument. Those pointed out upon which no argument is made, and concerning which no reason for reversal is given, we pass without comment. Counsel, in presenting the case, refers to the pages of the abstract upon which testimony complained of may be found. Turning to these pages, we do not find the evidence complained of in the argument upon the pages referred to, and it has been necessary for us to search through the record for the particular matter to which reference is made.

The first error relied upon involves the action of the court in admitting certain testimony over the objection of the defendant, and in sustaining objections to testimony offered 1. EVIDENCE: by the defendant. In presenting these questions in his brief, counsel has evidently overlooked the rule, or has abandoned himself to a freer method than the rules prescribe. In presenting a record in which he claims these errors appear, defendant pursued the following method:

"There was error in admitting over defendant's objection, the following testimony appearing on pages 10 and 11 of the abstract."

Here counsel sets out the testimony as it appears upon the abstract, with the rulings of the court complained of without comment. Turning to the abstract, we find that a witness who was present at the time of the encounter which resulted in the injuries complained of, was asked as to defendant's appearance at that time,—how his face appeared. The answer was: "Why, his face was flushed as though he had been drinking." This was objected to and the objection overruled. The portion of the answer "as though he had been

1. EVIDENCE: opinion evidence: "appearance" of person.

drinking,'' defendant moved to have stricken out. This also was overruled.

The evidence is abundant that the defendant had been, in fact, drinking. He denies that he was intoxicated, but that he had been drinking is not disputed. The controversy touching which this testimony was offered arose out of the fact that the defendant claimed that the plaintiff was the aggressor, while the plaintiff claimed that the assault was unprovoked. The appearance of the defendant at the time of the assault was competent and material. The question called for a fact, though in one sense the opinion of the witness. It was a statement of fact as to how the defendant appeared to the witness at the time.

Whether a person is intoxicated or not may be proved by a witness who has observed his conduct and his appearance at the time. The appearance of a person at a particular time can only be made manifest to the jury through the testimony of one who saw him at the time—one who observed and can describe his appearance. This kind of testimony has been

**2. EVIDENCE: opinion evidence: intoxication.**

recognized as competent. It has been presented in many ways. Many phases of this kind of testimony have been considered by the court. Whether a man is intoxicated or not is evidenced by his appearance, and one who has observed his appearance is competent to testify to the fact. The application of this rule in its general scope may be found in *Vannest v. Murphy,* 135 Iowa 123; *Yahn v. City of Ottumwa,* 60 Iowa 429; *Bizer v. Bizer,* 110 Iowa 248; *State v. Huxford,* 47 Iowa 16; *Winter v. Central Iowa R. Co.,* 74 Iowa 448.

The next complaint is stated in the following language:

**3. EVIDENCE: res gestae: motives and intention.**

''The court erred in admitting the following testimony. See pages 12, 13 and 14 of the abstract.''

Here the defendant sets out certain testimony with the rulings of the court. An examination of the abstract shows

that the complaint relates to the action of the court in permitting witnesses to state what the defendant said at the time that it is claimed he made the assault. We will not set the language out. It appears from the testimony of these witnesses that the defendant applied vulgar and opprobrious names to the plaintiff at the time of the assault. The words were a part of the act, accompanied the act, and were suggestive of the state of defendant's mind at the time that the act was committed.

The other testimony complained of relates to what the defendant did, the witness stating that he noticed the defendant had his hand in his pocket, "and this was suggestive to me, knowing he had left the room prior to that time." The last part of the answer was stricken out, to wit, "It was suggestive to me, knowing that he had left the room prior to that time." The rest was clearly competent as a description of an action of the defendant at the very time that the assault was made. No authority need be cited to support the ruling of the court.

We will not attempt to review all the attempted assignments of error in the introduction of testimony. Some are so clearly without merit that we may be permitted to express some surprise that they are urged here at all.

The next question complained of relates to the action of the court in permitting the plaintiff, when upon the stand, to answer the following question: "Did the injury interfere with the functions of the part alleged to have been injured, in any way?" The answer was that it does. The question was objected to on the ground that it called for the opinion of the witness as to the cause of the injury, and the witness was not an expert. The part affected had functions peculiarly its own. That the injury interfered with normal functional action was a matter that the witness who suffered the injury was in a position to know and appreciate better than anyone

4. EVIDENCE: opinion evidence: functional action of body.

else. It was a matter that was peculiarly within his own knowledge. The testimony disclosed his condition before and after the injury. He described minutely wherein the organ after the injury refused to perform its natural function. There was a visible injury upon the part affected—an injury that could be recognized by the eye. He said that the functional action was different since the injury. He had already testified to the place and character of the injury. The question was asked with reference to the injury complained of. The jury could not have been misled into thinking, under this whole record, that the plaintiff as an expert was giving independent testimony as to the effect of an injury to the part of the human anatomy on its functional action. His testimony related to himself, to the injury received, to the effect that it had upon him, so far as he understood it and saw it. We see no prejudicial error in this ruling. When counsel asked the witness what effect the injury had upon the functional action of the part affected, he called for the knowledge of the witness of that fact as the fact was manifest in his person.

The next complaint is in this language: ''The court erred in admitting incompetent testimony. See abstract pages 33 and 34.'' Upon these pages, we find that the court, over the objection of the defendant, permitted the plaintiff's wife to testify as follows:

5. EVIDENCE: *res gestae*: expressions of pain.

''To what extent, if any, did your husband complain of pains in the affected part? A. Well, I do not hardly remember about the pains. He just complained of pain. Q. State whether or not he used a cane in walking. A. Yes, sir.''

We are not favored with any argument on this proposition, nor is any reason given why that testimony is not competent. It relates to a time immediately following the injury. The authorities are abundant sustaining the action of the court.

It is next complained that one Minnie E. Allen was per-

mitted to testify as to certain statements made by the defend-
ant.    She was, at the time, the defendant's stenographer.

It was claimed that statements made to her

**6. WITNESSES:** privileged communications: stenographer.

were privileged, and that one cannot be per-
mitted to divulge a privileged communication.

It is true that she was doing work for him as
a stenographer at the time, but the matters testified to by
her had no relationship to the duties imposed upon her as
such, nor was the communication made to her in the capacity
of stenographer.    The statute relied upon is Section 4608,
Code Supp., 1913.    The inhibition relates to confidential com-
munications properly intrusted in a professional capacity, and
necessary and proper to enable one to discharge the functions
of his office according to the usual course of practice or dis-
cipline.    The matter testified to by the witness of which com-
plaint is made related to a statement made by the defendant
to her in which he said that she should tell the plaintiff to
come up; that he would treat him all right if he came to his
house; that he thought perhaps he had been a little hasty,
and perhaps they had both been wrong, and they had better
get together and fix this up.    The record does

**7. EVIDENCE:** admissions: offer of compromise.

not disclose when this was said by the defend-
ant.    Some claim is made that this is an
offer of compromise, and therefore should be excluded.    We
do not so construe it.    We find no error here.

The next complaint is of the testimony of this same
witness given touching the condition of Hatcher, as to being
intoxicated at the time of the assault.    The question was asked

her, "How soon did you see Mr. Hatcher

**8. EVIDENCE:** opinion evidence: intoxication.

after the meeting of the men on this evening
(referring to the evening when the claimed
assault was made)?    A.    Well, I should say
about five minutes; not over ten minutes at the most."    She
was then asked, "What was his condition at that time in so
far as being under the influence of intoxicating liquor?    A.

Well, Mr. Hatcher was pretty thoroughly intoxicated at the time."

No reason is urged why this evidence is not competent. We do not consider that the action of the court in admitting this testimony ought to be even the subject of criticism. See *State v. Huxford,* 47 Iowa 16.

Some complaint is made of the action of the court in admitting the testimony of Dr. Conaway, called on the part of the plaintiff. We have examined this testimony and find nothing in the record that requires any consideration at our hands.

It is next contended that the court erred in permitting counsel for plaintiff, on the cross-examination of Dr. Cheshire, to propound questions which, in their nature, were not proper to be propounded on cross-examination, in

9. EVIDENCE: opinion evidence: experts: cross-examination.

that the inquiry extended beyond the direct examination, and assumed facts which were not supported by the testimony. This objection might be good if the examination were in chief, but an entirely different rule obtains in the cross-examination of an expert. Where one is called as an expert, the cross-examination need not be confined to the matters drawn out on direct examination. Other matters, independent matters, may be inquired into for the purpose of testing his knowledge and skill as an expert. See *Taylor, Admr., v. Star Coal Co.,* 110 Iowa 40. In this case, it was urged that, in cross-examination of some of defendant's expert witnesses, questions were asked which assumed a state of facts not in the evidence. The court said:

"In cross-examining such a witness, it is not necessary that the examiner confine himself to the facts established in the case. He may assume almost any state of facts, for the purpose of testing the witness' credibility and the extent of his knowledge."

This same objection is urged in the cross-examination of Dr. Harris, who was called on the part of the plaintiff, and

the same reason urged for its exclusion. In neither case can the objection be sustained.

Defendant urges further error in the giving of the seventh, eighth and tenth instructions given by the court to the jury. We have examined these instructions and find no error in them, and they have support in the record.

On the whole record, we think the judgment must be sustained. No reversible error appearing, the cause is— *Affirmed.*

DEEMER, LADD and SALINGER, JJ., concur.