Kenneth L. SHEARER, Jr., a minor by Kenneth L. Shearer, his natural father and next friend, and Kenneth L. Shearer, Appellants,

v.

PERRY COMMUNITY SCHOOL DISTRICT, Defendant-Appellee, Nichols Wrestling Products, Inc., and Universal Athletic Sales Co., Defendants.

No. 2–56764.

Supreme Court of Iowa.

Dec. 17, 1975.

George P. Soumas, and Spellman, Spellman & Spellman, Perry, for appellants.

L. W. Rosebrook, of Ahlers, Cooney, Dorweiler & Haynie, Des Moines, for appellee Perry Community School District.

REES, Justice.

Plaintiffs appeal from the order of the trial court sustaining motion of defendant Perry Community School District for summary judgment and dismissing plaintiffs' petition as against the school district. We affirm.

On March 25, 1971, Kenneth L. Shearer, Jr., then age 14 and a student at Perry Community High School, was engaged in an exercise known as "curling" which involved lifting a weight attached to a bar with a cable, on a device described as a Universal Gladiator "70", the property of the school district. While the Shearer youth was involved in such exercise, a portion of the machine became disengaged from the rest of the device and struck him in the mouth and teeth, resulting in the loss of his two front teeth and necessitating considerable dental treatment.

At the time of the injury, the physical education instructor was in the room with young Shearer, and the injury was immediately reported to the assistant principal and the principal of the defendant school district. The following day Shearer's mother reported the injury to the superintendent of the school district.

On March 23, 1973, Kenneth Shearer, Jr., by and through his father and next friend, Kenneth L. Shearer, filed a petition against the school district and the distributor and manufacturer of the exercise machine for damages in the amount of $25,000 arising out of the injury. Kenneth L. Shearer, Sr., also prayed for damages against the school district in the amount of $5000 for loss of his son's services and other damages arising out of the injury. The petition of the plaintiffs was based upon theories of negligence, breach of implied warranty and the doctrine of strict liability. The manufacturer and distributor of the machine both answered and are not parties to this appeal.

Defendant school district filed answer denying liability and later filed its motion for summary judgment alleging neither plaintiff had complied with the notice requirements of § 613A.5, The Code, 1971, as amended. In their resistance to the motion for summary judgment, plaintiffs asserted the school district, through its agents and employees, had actual notice of the injury, that the time for bringing the action was extended by § 614.8, The Code, 1971, and further asserted that § 613A.5, The Code, is unconstitutional.

In sustaining defendant's motion for summary judgment and dismissing plaintiffs' petition as against the school district, trial court held actual notice by the teacher and other agents of the school district and verbal notice to the superintendent did not constitute compliance with § 613A.5; that § 614.8 had no application to the right of action and the limitation of actions created

by chapter 613A; and further that § 613A.5 was not unconstitutional. This appeal followed the entry of such order.

Plaintiffs present the following issues for review which they contend necessitate a reversal of the order of the trial court:

1. Section 613A.5, The Code, 1971, violates the guarantees of due process of law of the Constitution of the United States and the Constitution of the State of Iowa.

2. Section 613A.5, The Code, 1971, violates the Equal Protection Clause of the Constitution of the United States.

3. The actual knowledge of the injury to plaintiff on the part of teachers or other agents of the school district and the verbal notice of the injury to the superintendent of the school district constituted substantial compliance with the notice requirements of § 613A.5, The Code, 1971.

4. Section 614.8, The Code, 1971, extended in the case of the minor plaintiff the time for making a claim for personal injuries against the school district to a period ending one year after the termination of his minority.

I. In their first issue presented for review, plaintiffs assert § 613A.5, The Code, 1971, is repugnant to the guarantees of due process of law set forth in Amendment 14 of the United States Constitution, and in the Constitution of the State of Iowa.

Chapter 613A, The Code, 1971, provided for the tort liability of governmental subdivisions and for methods of enforcing a right of action arising thereunder. Section 613A.5 provided periods of limitation for claimants asserting a right to recover under the chapter. Said section is as follows:

"613A.5 Limitation of actions. Every person who claims damages from any municipality for or on account of any wrongful death, loss or injury within the scope of section 613A.2 shall commence an action therefor within three months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. Failure to state the amount of compensation or other relief demanded shall not invalidate the notice; providing, the claimant shall furnish full information regarding the nature and extent of the injuries and damages within fifteen days after demand by the municipality. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. The time for giving such notice shall include a reasonable length of time, not to exceed ninety days, during which the person injured is incapacitated by his injury from giving such notice."

Plaintiffs argue the above statute is constitutionally offensive on its face and as applied to them in that it arbitrarily and capriciously infringes upon a vested property right and places the burden on an injured minor to protect such right regardless of his age or the nature and extent of his injury.

Plaintiffs are laboring under a heavy burden. With exceptions not here involved, statutes regularly enacted by legislatures are afforded a strong presumption of constitutionality and all reasonable intendments are indulged in favor of the validity of the legislation attacked. *Presbytery of Southeast Iowa v. Harris*, 226 N.W.2d 232, 237 (Iowa 1975); *Keasling v. Thompson*, 217 N.W.2d 687, 689 (Iowa 1974) and citations. Where the constitutionality of a statute is doubtful or fairly debatable, we will not set it aside. *Keasling v. Thompson, supra.*

Plaintiffs invoke the due process clauses of both our state's constitution and Amendment 14 to the United States Constitution. The provisions of both are similarly phrased. Where constitutional provisions contain similar guarantees, they are usually

deemed to be identical in scope, import, and purpose. *Davenport Water Co. v. Iowa State Commerce Commission,* 190 N.W.2d 583, 593 (Iowa 1971).

We consider first plaintiffs' claim § 613A.5 is constitutionally offensive on its face. Important in our consideration is the fact chapter 613A created a right of action unknown at our common law. In *Sprung v. Rasmussen,* 180 N.W.2d 430, 433 (Iowa 1970), we said of this chapter, and particularly of § 613A.5:

> "The statute creates a new liability and provides for methods of enforcing the same, and by its terms fixes the time within which action for recovery may be commenced. It being a statute of creation, the commencement of the action within the time the statute fixes is an indispensible condition of the liability and of the action permitted. *The time element is an inherent element of the right so created, and the limitation of the remedy is likewise a limitation of the right."* (emphasis supplied)

At the same page of *Sprung, supra,* we noted that under these statutes of creation, sometimes referred to as "conditions precedent to suit" statutes, non-compliance affects the right of action as well as the remedy. We also commented upon the basis for disparate treatment of victims of governmental and private torts, saying:

> "Where, as here, the legislature has created a new right of action, it made a legislative judgment that the cause should be brought within a specified time. This difference doubtlessly arises from the fact the statute we are here interpreting is in derogation of sovereign immunity and that the legislature might, and did, properly restrict and limit the application of the statute."

█ In the light of our interpretation of § 613A.5 we are unable to agree with plaintiffs that said section arbitrarily and capriciously infringes upon or cuts off vested rights in violation of constitutional guarantees. Instead, we conclude the right of action provided by chapter 613A is co-extensive with, and no broader than, the notice requirement of § 613A.5. In other words, it might be said compliance with the notice requirement is a condition precedent to the maintenance of an action for compensation for torts committed by governmental subdivisions. See 1 Am.Jur.2d Actions § 81, p. 610.

We might find some difficulty in upholding § 613A.5 against a constitutional challenge if it were shown the condition attached to the right of action was so unreasonable as to render compliance almost impossible or to give an injured person, in essence, no right of recovery. Yet we are mindful of the general rule stated in 16 C.J.S. Constitutional Law § 266a, p. 1260:

> "Where the time within which a right of action may be enforced is limited by the legislative enactment which creates the right, the legislature is the exclusive judge of the reasonableness of the limitation and it is not the province of the courts to inquire concerning it."

Courts have attributed to legislatures a number of intentions in the enactment of notice statutes such as that with which we are here concerned. Most of such legislative intentions have been held to be bottomed on the belief that where a governmental division is involved the public has an interest it does not have as to claims against private persons in seeing prompt and thorough investigation of claims is made. *Lunday v. Vogelmann,* 213 N.W.2d 904, 907 (Iowa 1973). Such notice requirements protect the public treasury from stale claims, permit prompt settlement of meritorious claims, avoid unnecessary litigation, facilitate planning of municipal budgets, and ensure that notice reaches the public officers with responsibility to deal with them, enabling such officers to remedy defects in municipal property before other persons are injured. See *Lunday v. Vogelmann, supra* at 908–909, and citations.

In the light of the enumerated permissible purposes for the enactment of § 613A.5,

we are unwilling to say said statute is arbitrary and capricious on its face. Plaintiffs have not carried their burden to prove the statute unconstitutional in this regard.

Plaintiffs place heavy reliance on *Grubaugh v. City of St. Johns*, 384 Mich. 165, 180 N.W.2d 778. In *Grubaugh* the Michigan court held a statute similar to our § 613A.5 offensive to due process as applied to the particular plaintiff. We note the Michigan court has followed the *Grubaugh* rationale in several cases, notably *Hussey v. City of Muskegon Heights*, 36 Mich.App. 264, 193 N.W.2d 421, and *Corona v. County of Lenawee*, 36 Mich.App. 579, 194 N.W.2d 46. Aside from the fact the *Grubaugh* decision did not invalidate the Michigan statute on its face, we note it was also premised on the court's conclusion the legislature, by abrogating sovereign tort immunity, intended that victims of public and private torts be placed on equal footing. We have no basis for following that reasoning here. See *Sprung v. Rasmussen, supra*.

Plaintiffs ask that we declare § 613A.5 unconstitutional in its application to the claim of Kenneth Shearer, Jr. Unfortunately, plaintiffs' brief does not provide us with reasons why the statute has operated unreasonably with respect to the peculiar circumstances of the Shearers' situation. Rather, plaintiffs rely on the fact young Shearer was 14 years old when his injuries occurred, and upon general statements that the statute applied to infants is unjust, unfair, illogical, arbitrary, capricious, offensive and wrong. They further allude to the burden the notice requirement places upon an injured youth no matter how serious his injuries or his age, but do not explain how Shearer's age at the time, or the claimed seriousness of his own injuries, made it unreasonable to expect from him compliance with the statute in this particular instance.

■ The adjudication of the constitutionality of statutes is too delicate a task to be based upon generalities or conjecture. We must hold plaintiffs have not met the burden of demonstrating the statute violative of due process as applied to the minor.

■ II. We reject plaintiffs' claim § 613A.5, The Code, violates the Equal Protection Clause of Amendment 14 to the United States Constitution. According to plaintiffs, the notice requirement of that section arbitrarily divides the natural class of tort-feasors and tort victims into unequally treated subclasses, namely, private tort-feasors and their victims and governmental tort-feasors and their victims.

We rejected an identical claim in *Lunday v. Vogelmann, supra*, and there held we were unable to say § 613A.5, The Code, was patently arbitrary and bore no rational relationship to a legitimate governmental interest. We believe that reasoning to be sound and dispositive of the identical issue in the instant case.

III. In the third issue stated for review, plaintiffs contend actual knowledge of the injury on the part of the physical education instructor, the principal and the vice principal of the school, together with the verbal notification to the superintendent by Shearer's mother on the day following the accident, constituted substantial compliance with the notice requirements of § 613A.5. We are unable to agree with plaintiffs' contention in this regard.

In *American States Insurance Co. v. City of Dubuque*, 186 N.W.2d 601, 604 (Iowa 1971), we held the notice required by § 613A.5 is essential to the maintenance of a suit under chapter 613A, and its minimal content specifically a requirement of the statute. We reiterated this view in *Goodwin v. City of Bloomfield*, 203 N.W.2d 582, 586 (Iowa 1973), wherein we said:

"We now hold section 613A.5 prescribes the minimal essential contents of a notice of claim required by this section and substantial compliance therewith is essential to the maintenance of suit against a municipality for tort * * *."

■■ The knowledge on the part of the school officials and employees certainly can-

not be construed as substantial compliance with the notice requirements of the statute. We are not informed as to the substance of the verbal notification to the superintendent by the student's mother, but in any event we are not prepared to say such verbal notification constituted substantial compliance with a statute clearly and specifically requiring written notice.

IV. Finally, plaintiffs contend § 614.8, The Code, 1971, extended, to a minor making claim for personal injuries against a school district, the time for the assertion of such claim through a period ending one year after the termination of his minority.

This issue was before us in *Vermeer v. Sneller*, 190 N.W.2d 389 (Iowa 1971), but a majority of this court did not believe its treatment necessary to the disposition of that appeal. The question is, therefore, one of first impression in this case.

Chapter 614 of the 1971 Code was entitled, "Limitations of Actions," and § 614.8 thereof provided as follows:

> "Minors and mentally ill persons. The times limited for actions herein, except those brought for penalties and forfeitures, shall be extended in favor of minors and mentally ill persons, so that they shall have one year from and after the termination of such disability within which to commence said action."

Plaintiffs contend we should interpret § 614.8 as applying to actions brought under the provisions of chapter 613A. We cannot agree.

 It is clearly within the power of a legislature to put adults and minors on an equal basis with regard to statutes of limitation. See *Lane v. Travelers Ins. Co.*, 230 Iowa 973, 977, 299 N.W. 553, 554. Where the legislature creates a new cause of action unavailable at common law, or in derogation of common law, it is not required to exempt minors from limitations upon such cause of action.

 Section 614.8 does, as plaintiffs point out, provide that minority of a claimant tolls a statute of limitations, but by its terms it is applicable only to actions referred to in chapter 614, The Code, i. e., "actions herein." The benefit of § 614.8 is limited by its own language.

We must conclude the conditions and times fixed by § 613A.5, The Code, exclusively control rights and remedies available under chapter 613A. Section 613A.5 provides that disability shall extend the period of time in which an incapacitated or injured person shall present the required notice of claim to a municipality. *Sprung v. Rasmussen, supra.* There is nothing in § 614.8 which provides for a tolling of the notice of claim period because of the minority of a claimant seeking to maintain an action under chapter 613A, and we must therefore hold the minority of plaintiff Kenneth L. Shearer, Jr., did not toll the operation of the statute.

In conclusion, we hold plaintiffs have not shown § 613A.5, The Code, to be constitutionally infirm or offensive. Neither have they established compliance with the notice requirements of the section. We further hold § 614.8, The Code, did not act to toll the notice period. Trial court was correct in sustaining defendant's motion for summary judgment and dismissing plaintiffs' petition, and must be affirmed.

Affirmed.

MOORE, C. J., and RAWLINGS, Le-GRAND and UHLENHOPP, JJ., concur.

REYNOLDSON, J., dissents.

MASON, HARRIS and McCORMICK, JJ., join Division II of the dissent.

REYNOLDSON, Justice (dissenting).

I respectfully dissent from divisions I and II of the majority opinion.

I. Following *Lunday v. Vogelmann*, 213 N.W.2d 904 (Iowa 1973), the majority turns back plaintiffs' constitutional assault on § 613A.5, The Code, as violating the equal protection clause, Amendment 14, United

States Constitution. My convictions remain as expressed in the *Lunday* dissent, 213 N.W.2d 908–912. It should be added parenthetically the facts in this appeal place it among those analyzed in that dissent which belie the obsolete rationalizations employed to justify the constitutionality of § 613A.5, including the concept this suit-limiting notice statute is necessary to give the municipality knowledge of the injury. Here the school's employees knew of the injury the day it occurred, and defendant district's executive officer knew of it the next day.

II. But the majority also rejects plaintiffs' argument that § 613A.5 is, on its face and as applied to this minor, violative of the due process clauses of the United States and Iowa Constitutions. We noted this issue but considered its resolution unnecessary in *Vermeer v. Sneller,* 190 N.W.2d 389, 395 (Iowa 1971) and *Lunday v. Vogelmann,* supra, 213 N.W.2d at 906.

The majority correctly states where constitutional provisions contain similar guarantees, they are usually deemed to be identical in scope, import, and purpose. For example, when in *Duncan v. City of Des Moines,* 222 Iowa 218, 227, 268 N.W. 547, 551 (1936), we struck down as unconstitutional state legislation purportedly enacted under the police power, we linked together the following Iowa and United States constitutional provisions:

"The Constitution of this state contains section 1 of article I, known as the Bill of Rights. This section is as follows:

'All men are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness.'

"Section 9 of the Bill of Rights, in the last clause thereof, says:

'But no person shall be deprived of life, liberty, or property, without due process of law.'

"This, it will be observed, conveys the same idea as contained in section 1 of the 14th Amendment of the Federal Constitution,

'nor shall any State deprive any person of life, liberty or property, without due process of law.' "

We may thus turn to federal decisions for the due process concept applicable here. Plainly relevant is a federal decision which turned squarely on the due process clause, *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d, 113 (1971). The *Boddie* court pointed out due process litigation has " * * * typically involved rights of defendants—not, as here, persons seeking access to the judicial process in the first instance," and noted " * * * this Court has seldom been asked to view access to the courts as an element of due process." 401 U.S. at 375, 91 S.Ct. at 784, 28 L.Ed.2d at 117.

After noting that in *Covey v. Town of Somers,* 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956), "The Court expressly rejected an argument that 'the Fourteenth Amendment does not require the State to take measures in giving notice to an incompetent beyond those deemed sufficient in the case of the ordinary taxpayer' ", the *Boddie* court observed,

"Just as a generally valid notice procedure may fail to satisfy due process because of the circumstances of the defendant, so too *a cost requirement,* valid on its face, *may offend due process because it operates to foreclose a particular party's opportunity to be heard.* The State's obligations under the Fourteenth Amendment are not simply generalized ones; rather, *the State owes to each individual that process which, in light of the values of a free society, can be characterized as due."* (Emphasis supplied.)

—401 U.S. at 380, 91 S.Ct. at 787, 28 L.Ed.2d at 120.

After *Boddie* there can be no doubt the construction of a statute limiting the "opportunity to be heard" has due process im-

plications not only for the named defendant in litigation, but for one who, as plaintiff, seeks access to the judicial system. See *Bush v. Reid,* 516 P.2d 1215 (Alaska 1973). Before leaving the federal cases we should note those decisions holding constitutional rights do not turn upon whether a governmental benefit is characterized as a "right" or a "benefit", *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972); *Graham v. Richardson,* 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534, 543 (1971), and those which hold whether any procedural protections are due depends on the extent to which an individual will be "condemned to suffer grievous loss." *Morrissey v. Brewer,* supra, and citations.

It is not necessary to our decision here to debate whether plaintiffs' right to redress in court is an inalienable right per se, as I unsuccessfully contended in *Lunday,* or a statutory right. It is noteworthy in passing, however, that four justices of this court, forcefully dissenting in *Boyer v. Iowa High School Athletic Association,* 256 Iowa 337, 127 N.W.2d 606 (1964), argued that as governmental immunity was "court-made the rule should be eliminated by its creator." 256 Iowa at 350, 127 N.W.2d at 614. And the *Boyer* majority never disputed the court's right to strike down the immunity barrier judicially interposed to thwart injured persons' remedies against municipalities, it simply took the position the matter was "a public policy doctrine * * * more appropriately left to the legislature." 256 Iowa at 348, 127 N.W.2d at 612. Under the position of both the majority and minority, this court had the power to abolish municipal governmental immunity. Had it been exercised the resultant tort remedy would have no statutory origin. A person injured by municipal tort would have followed the same procedures available against any other tortfeasor. Section 614.8, The Code, would have protected those disabled by minority or mental illness. The fact this court elected to await legislative action should not mean child tort victims' rights may be shackled by unconstitutional restraints.

It is clear chapter 613A constitutes a legislative recognition of a remedy for a person injured through tort of the municipality or its agents. Section 613A.2 declares a municipality is liable for its torts and those of its officers, employees and agents. At the time of this injury "tort" was defined as "every civil wrong which results in wrongful death or injury to person or injury to property and includes but is not restricted to actions based upon negligence, breach of duty and nuisance." Section 613A.1(3), The Code. After the *Lunday v. Vogelmann* decision was filed the definition was expanded to include, *inter alia,* "impairment of any right under any constitutional provision, statute, or rule of law." 65 G.A., Ch. 1263, § 2 (1974).

Thus we arrive at the hard questions presented by this litigation: Does this minor plaintiff have a property interest, and if so, does § 613A.5 so inhibit his right to enforce it as to deprive him of "that process which, in light of the values of a free society, can be characterized as due"?

The identification of a property interest is decisive because if the minor has one it is among his inalienable rights, Iowa Constitution, Art. I, § 1, and cannot be taken from him without due process of law. United States Constitution, Amendment 14, § 1; Iowa Constitution, Art. I, § 9.

When the word "property" is used without qualification it may reasonably be construed to include obligations, rights and other intangibles, as well as physical things. *Citizens State Bank of Barstow, Texas v. Vidal,* 114 F.2d 380, 382–383 (10 Cir. 1940); *Beeghly v. Wilson,* 152 F.Supp. 726 (N.D. Iowa 1957).

The term "property" includes choses in action. *Gulf, C. & S. F. Ry. Co. v. Cities Service Co.,* 273 F. 946, 949 (D.Del.1921). Such property falls within the protection of federal and state constitutional provisions prohibiting deprivation of property without due process. *Chemical Foundation v. E. I.*

*DuPont de Nemours & Co.,* 29 F.2d 597, 602 (D.Del.1928), aff'd, 39 F.2d 366 (3 Cir. 1930), aff'd, 283 U.S. 152, 51 S.Ct. 403, 75 L.Ed. 919 (1931); *Bush v. Reid,* supra at 1219; *People v. Eddy,* 43 Cal. 331, 13 Am.Rep. 43 (1872).

Clearly, a minor has a property interest (chose in action) instanter upon becoming a victim of a municipality's tort.

We thus arrive at the second branch of our inquiry, whether the constraints of § 613A.5 effectively operate to deprive minors of due process. We examine its impact on minors in light "of the values of a free society," *Boddie,* supra, and in particular, the mantle of protection we have traditionally thrown about children as legally incompetent under our common law rules and statutory law.

Early in the history of this bench we find the court ruling,

> "It is the duty of every court to watch, with jealous care, the interests of those parties who, in legal contemplation, are incapable of asserting their just rights."
>
> —*Cavender v. Heirs of Smith,* 5 Iowa 157, 195 (1857).

See 43 C.J.S. Infants § 105, pp. 271–272.

The minor is accorded special consideration in the field of torts. In *Rosenau v. City of Estherville,* 199 N.W.2d 125, 129 (Iowa 1972) we said, "In these cases where the two principles collide—where statute and child meet—the better reasoned decisions hold a child is not to be charged with negligence per se even though his conduct may involve violation of a statute which relating to an adult would require application of that rule."

The common law presumption that children under age 14 were incapable of committing any crime, *State v. Fowler,* 52 Iowa 103, 106, 2 N.W. 983, 986 (1879), has resolved into those protections codified in chapter 232, The Code. An infant was from the earliest times the ward of the court and generally incapable of making other than a voidable contract. *Wallin v.*

*Highland Park Co.,* 127 Iowa 131, 102 N.W. 839 (1905); *Jenkins v. Jenkins,* 12 Iowa 195 (1861); see *Allen v. Berryhill,* 27 Iowa 534 (1869); § 599.2, The Code.

Material which is constitutionally protected for distribution to adults is not necessarily constitutionally protected from restriction upon its dissemination to children. The United States Supreme Court, noting 36 states have enacted such legislation, has recognized the exigent interest of the states in protecting their children. *Ginsberg v. New York,* 390 U.S. 629, 636–639, 88 S.Ct. 1274, 1278–1280, 20 L.Ed.2d 195, 202–203 (1968); see chapter 725, The Code, 1975.

The societal values accorded the special status of children in our law were best articulated by the Illinois Supreme Court when faced with a similar statute which also failed to mention its application to children. The court observed "if the construction insisted upon by appellee were adopted it would undoubtedly render the act unconstitutional, as depriving appellant [minor] of due process of law." The Illinois court construed the statute to exclude the requirement of notice by children, employing the following rationale:

> "Statutes general in their terms are frequently construed to contain exceptions, when considered in connection with well-known rules of law, without the courts being subjected to the criticism of having entered the legislative field. This is done upon the theory that statutes, though general in their terms, have been enacted with the full recognition of rules of law which have become well known and well established. From time immemorial the status of a minor of tender years has been recognized in law to be different from that of one of more mature years. The law recognizes that up to the age of seven years a child is incapable of such conduct as will constitute contributory negligence, and our courts have uniformly so stated the law in their instructions to juries. *Chicago City Ry. Co. v. Tuohy,* 196 Ill. 410, 63 N.E. 997, 58

L.R.A. 270; *Illinois Central R. Co. v. Jernigan,* 198 Ill. 297, 65 N.E. 88. At common law an infant within seven years of age could not be convicted on a criminal charge, as he was conclusively presumed not to be capable of committing a crime, and between the ages of 7 and 14 he was still presumed to be incapable; but between those ages this presumption might be overcome by proof. These rules of law are based upon the well-known fact of the incapacity of children of tender years, and they are not held to the same accountability as are adults. The recognition, by the law, of the status of infants, and of their exemption up to a certain age from liability under the law, is so well known that it must be presumed that the Legislature in enacting such a statute as the one under consideration, did not intend by the general language used to include within its provisions a class of persons which the law has universally recognized to be utterly devoid of responsibility."

—*McDonald v. City of Spring Valley,* 285 Ill. 52, 54–55, 120 N.E. 476, 477 (1918).

In *Grubaugh v. City of St. Johns,* 384 Mich. 165, 180 N.W.2d 778 (1970), the Michigan Supreme Court held the state's 60-day notice statute unconstitutional as violative of due process, as applied to an injured minor plaintiff. The court there noted:

"It is axiomatic that the constitutional provision of due process extends to protect that 'property' construed to be a vested right and that generally an accrued right of action is a vested property right which may not be arbitrarily impinged. See 16 Am.Jur.2d, Constitutional Law, § 421, et seq.

In determining whether a vested right had accrued to plaintiff under the remedial statute here involved, we turn to 2 Cooley [Constitutional Limitations], *supra,* where the full dimension of the issue was expressed at p. 745:

'Nevertheless, in many cases and many ways remedial legislation may effect [sic] the control and disposition of property, and in some cases may change the nature of rights, give remedies where none existed before, and even divest legal titles in favor of substantial equities where the legal and equitable rights do not chance to concur in the same persons.

The chief restriction upon this class of legislation is, that vested rights must not be disturbed; but in its application as a shield of protection, *the term 'vested rights' is not used in any narrow or technical sense, or as importing a power of legal control merely, but rather as implying a vested interest which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived arbitrarily without injustice.* The right to private property is a sacred right; not, as has been justly said, 'introduced as the result of princes' edicts, concessions, and charters, but it was the old fundamental law, springing from the original frame and constitution of the realm.' (Emphasis added.)"

—384 Mich. at 170–171, 180 N.W.2d at 781.

In *Grubaugh* the Michigan court rejected the rationale adopted here by the majority:

"It is argued in this case that our Court in *Moulter v. City of Grand Rapids* (1908), 155 Mich. 165, pp. 168, 169, 118 N.W. 919, 920, held:

'It being optional with the Legislature whether it would confer upon persons injured a right of action therefor or leave them remediless, it could attach to the right conferred any limitations it chose. Whether the limitations imposed are reasonable or unreasonable in such cases are questions for the Legislature, and not for the courts.'

The logical result of such a rule under that holding, and as advocated by defend-

ant in the instant case, would be to legislatively divest plaintiff, under legal disability as he was during the 60-day period, of a vested right without due process of law.

Under the statute a plaintiff could institute suit on the first or fifty-ninth day after the injury. To take away his cause of action on the sixty-first day because he could not meet the notice provisions of the act would deprive him of a vested right of action without due process of law."

—384 Mich. at 175, 180 N.W.2d at 783.

It is as true in the case *sub judice* that the minor plaintiff's cause of action against defendant school district was viable if filed within the three months following his injury. It is not correct, as majority asserts, that "the notice requirement is a condition precedent to the maintenance of an action for compensation for torts committed by governmental subdivisions." Under relevant provisions of § 613A.5, a tort victim may, within three months (now six months, 65 G.A., Ch. 1263, § 5), bring action and never provide the municipality with any notice other than an original notice of suit. *Heth v. Iowa City,* 206 N.W.2d 299 (Iowa 1973); *Gates v. City of Des Moines,* 240 Iowa 775, 38 N.W.2d 96 (1949). That one under legal disability to protect his own property interests could be so stripped of a vested right after three months unless he filed notice within sixty days should cause us to reflect on the incongruities inherent in majority's treatment of child claimants.

The minor himself cannot sue for his own injury. Rule 12, Rules of Civil Procedure; 42 Am.Jur.2d, Infants § 155, p. 147. Neither can he compromise, settle, or release a damage claim for his own injuries. See §§ 633.647(5), 633.648, The Code. So a statutory direction that no such action may be brought after three months unless " * * * said person [who claims damages] shall cause to be presented * * * within sixty (60) days * * * a written notice * * * " should be viewed with suspicion,

especially where we have noted, "The statute expressly imposes upon the injured party the responsibility for the giving of the required notice." *Sprung v. Rasmussen,* 180 N.W.2d 430, 432 (1970). In addition, persons non sui juris are ordinarily held incapable of appointing an agent. 2A C.J.S. Agency § 28, pp. 592–593. With limited exceptions not here relevant, see §§ 633.108, 633.681, rule 297, R.C.P., a parent as such has no control over the property of the child.

The anomaly of requiring a minor who cannot sue on, compromise or release his damage claim for injuries to nonetheless legally protect it by serving a complicated written notice has been marked by other jurisdictions which are in agreement with *Grubaugh,* supra. See *Lazich v. Belanger,* 111 Mont. 48, 54, 105 P.2d 738, 739 (1940) ("It would be unreasonable to require that to be done which plaintiff was incapable of doing. Neither should his right of action be frittered away because of the omission of the parents to give notice. To so hold would be to impute the negligence of the parents to the child—a doctrine which has long since been repudiated by this court"); *Turner v. Staggs,* 89 Nev. 230, 233–234, 510 P.2d 879, 881–882, cert. denied, 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973) ("The requirement of giving notice presupposes the existence of an individual capable of giving it. * * * We could conclude that minority alone will excuse compliance with the notice requirements * * * and dispose of this case upon the ground that the notice requirements of our claim statutes violate the rights of these minors to due process * * * "); *McCrary v. City of Odessa,* 482 S.W.2d 151, 153 (Tex.1972) (" * * * persons of tender years * * * are powerless to comply with such conditions.")

Especially pertinent here is the following from *Hunter v. North Mason High School,* 12 Wash.App. 304, 306, 529 P.2d 898, 899–900 (1974):

"Simply stated, it would be fundamentally unfair for a minor to be denied his

recourse to the courts because of circumstances which are both legally and practically beyond his control. The legal disabilities of minors have been firmly established by common law and statute. They were established for the protection of minors, and not as a bar for the enforcement of their rights.

\* \* \*

A minor lacks the capacity to appoint an attorney, and his capacity to appoint an agent is disputable. 43 C.J.S. Infants § 23 (1945). As stated, his right of action should not depend on the good fortune of having an astute relative or friend to take the proper steps on his behalf. \* \* \*

It is noteworthy that minority alone is a disability which tolls the general statute of limitations. RCW 4.16.190. There is no reason why the minor should not be similarly protected when the alleged wrongdoer is a governmental entity. To grant the minor protection in one situation and not the other is arbitrary and manifestly unjust."

See also *City of Barnesville v. Powell,* 124 Ga.App. 132, 183 S.E.2d 55 (1971); *Reich v. State Highway Department,* 386 Mich. 617, 194 N.W.2d 700 (1972); *Gonzalez v. State Liquor Authority,* 30 N.Y.2d 108, 331 N.Y. S.2d 6, 282 N.E.2d 101 (1972); *City of Tulsa v. Wells,* 79 Okl. 39, 191 P. 186 (1920); *City of Houston v. Bergstrom,* 468 S.W.2d 588 (Tex.Civ.App.1971); *Simpson v. City of Abilene,* 388 S.W.2d 760 (Tex.Civ.App.1965).

The majority's interpretation of § 613A.5 to cut off this minor's property right stands in stark contrast to the legislature's careful language when it sets out to limit a minor's continuing property rights in chapter 614, The Code. In both § 614.17 (claims to real estate antedating 1960) and § 614.24 (reversion of use restrictions on land—preservation) not only are the time sequences more reasonable, the obligation to take affirmative action to preserve the right is, in the case of a minor, placed squarely on his "guardian, trustee or either parent" (§ 614.-

17) or his "guardian, trustee, or either parent or next friend" (§ 614.24). In addition, in each instance, a separate section carefully draws notice to the fact § 614.8 (extending time for minors and mentally ill) is not applicable against the provisions of §§ 614.-17 and 614.24. See §§ 614.19, 614.27.

The futility of the effort to identify an esoteric right of action created by chapter 613A to constitutionally justify the unreasonable and arbitrary treatment of minors under § 613A.5 will be evident when the first minor's case against an employee under the present amendment to this section surfaces here. 65 G.A., ch. 1263 § 5 (1974). A common law tort action against a municipal employee has long been recognized in Iowa. *Crabb v. Payton,* 192 N.W.2d 761, 762 (Iowa 1971); *Vermeer v. Sneller,* supra at 392 and citations. But under § 613A.5 as now amended, following majority's interpretation, a minor "who claims damages from \* \* \* any officer, employee, or agent of a municipality \* \* \* under common law" would be confronted with the sixty-day notice requirement. 65 G.A., ch. 1263 § 5.

Thus a legislative largess in relaxation of governmental immunity cannot be utilized to justify constitutionally unreasonable or arbitrary treatment of infants, or to deprive them of access to courts under a strict interpretation of § 613A.5. It is now clear the legislature has included within that section's limitations common law actions against which governmental immunity has never been a recognized defense.

In the end it would be of little importance whether we held the school district's interpretation adopted by district court would render § 613A.5 unconstitutional and therefore judicially construe that section as inapplicable to minors, or held it has been properly construed by the school district and district court as including minors and hold it unconstitutional with respect to children, facially and as applied here, as violative of due process under both the state and federal constitutions. Compare *McDonald*

*v. City of Spring Valley,* supra, with *Hunter v. North Mason High School,* supra.

The first alternative suggests itself as the more appropriate solution. If the rights of infants which have always had the "jealous care" of this court, *Cavender,* supra, and even the legislature's careful protection in other contexts, see, e. g., § 614.8, are to be subjugated to the interests of the insurance carriers for municipalities and their employees, then the legislature will surely be more specific than the present language of § 613A.5. As the legislature has not specified the status of children with respect to such litigation, I would simply postpone the statutory time limitations of § 613A.5 until the child's disability is removed. See

*McCrary v. City of Odessa,* supra, 482 S.W.2d at 154. By construing the statute as inapplicable to those under the legal disability of minority we would have resolved the issue of constitutionality as raised in this litigation.

I would reverse and remand for trial on the merits.

MASON, HARRIS and McCORMICK, JJ., join Division II of this dissent.